**Donald F. HUNGERFORD, for himself and as next of kin to Ella F. Hungerford, Deceased**

v.

**STATE of Tennessee.**

Court of Appeals of Tennessee, at Jackson.

Sept. 15, 2003 Session.

Dec. 31, 2003.

Permission to Appeal Denied by Supreme Court June 28, 2004.

Duncan E. Ragsdale, Memphis, Tennessee, for the Appellant Donald F. Hungerford.

Rebecca P. Tuttle, Memphis, Tennessee, for the Appellee State of Tennessee.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

This case involves the dismissal of a claim for the claimant's failure to respond to an order to show cause. The claimant filed a lawsuit in circuit court, as well as a claim in the Claims Commission, alleging medical malpractice by state-employed physicians treating his wife. The claimant moved to transfer the Claims Commission

claim to circuit court. The claimant was ordered by the Claims Commission to file a more definite statement. He failed to do so, and failed to respond to further orders by the Claims Commission. Consequently, the claim was dismissed. The claimant moved to set aside the dismissal, arguing that his failure to respond was justifiable due to the confusion created by renovation of his attorney's office. The Commission denied the motion. We affirm, holding that the Commission did not abuse its discretion in declining to transfer the claim and in denying the motion to set aside dismissal of the claim.

This appeal arose from the Claims Commission's dismissal of a claim. On July 18, 2001, Plaintiff/Appellant Donald Hungerford ("Hungerford") filed a complaint in circuit court alleging the wrongful death of his wife as a result of medical malpractice. That same day, he filed a claim against the Defendant/Appellee State of Tennessee ("State") in the office of Claims Administration for the alleged participation of State employees in the events leading to his wife's death. The Claims Administration transferred Hungerford's claim to the Claims Commission. In the Claims Commission, Hungerford immediately moved to have his claim against the State transferred to circuit court, apparently under section 9–8–404(b) of the Tennessee Code, which permits transfer from the Commission when "fair and complete resolution of all claims involved cannot be accomplished." Tenn.Code Ann. § 9–8–404(b) (1999). Such transfers are "limited to tort claims arising out of the same fact situation where much of the evidence to be presented would be admissible against the state and one (1) or more additional defendants." *Id.* Though he did not cite section 9–8–404(b) in support of the motion to transfer, Hungerford stated, "The Claims Commission matter arises from a tort claim involving Shelby County Health Care Corporation, Inc. and individual Defendants, not state employee [sic] but whose testimony is admissible against the State."

On November 29, 2001, the State filed a "Motion for More Definite Statement," arguing that Hungerford's complaint "fail[ed] to clearly identify any employee of the State of Tennessee against whom the cause of action for medical negligence and damages are alleged and fail[ed] to specify which, if any State employee, allegedly deviated from the applicable standard of care." Along with the motion for more definite statement, the State filed its response to Hungerford's motion to transfer, asserting that because Hungerford's "vague and ambiguous" complaint failed to articulate a claim against the State, it could not be determined whether the claim met the requirements for transfer set forth in section 9–8–404(b). Hungerford did not respond to the State's "Motion for More Definite Statement."

On December 18, 2001, the Claims Commission's "Order for More Definite Statement" was entered, requiring Hungerford to submit a more definite statement of his claim "within thirty days from the date of the order," [1] that is, by January 17, 2002.[2] Hungerford failed to file the more definite statement by the January deadline. On

---

**1.** Although it is unclear whether this time period began accruing from the date the order was filed, December 18, 2001, or from the date it was signed, December 14, 2001, resolution of this ambiguity is not necessary to the ultimate disposition of this appeal.

**2.** Although the one-page order found in the record does not include this thirty-day deadline, it is apparently undisputed that the order in fact set the deadline in a second page, not included in the record. Hungerford includes the additional page in his Appendix and the State freely cites the page in its brief.

February 1, 2002, counsel for Hungerford made an appearance before the Claims Commission at a docket call. At this time, he told the Commissioner that the more definite statement of Hungerford's claim would be filed "shortly."

Despite his February 1 promise to file the more definite statement "shortly," as of February 14, 2002, Hungerford's counsel had filed no response to the December 18, 2001 order to file a more definite statement. This was nearly a month after the January 17 deadline for doing so. On February 14, 2002, the Claims Commission signed an "Order to Show Cause," giving Hungerford thirty days to respond. Hungerford failed to respond. On March 22, 2002, the Claims Commission dismissed the claim, based on Hungerford's failure to respond to both the order for more definite statement and the order to show cause. The order was entered March 27.

On April 30, 2002, Hungerford filed a "Motion to Set Aside Dismissal and to Reinstate Cause." Along with this motion, Hungerford finally filed his more definite statement, more than three months after the deadline for doing so. In support of the motion to set aside the dismissal, apparently filed under Rule 60.02 of the Tennessee Rules of Civil Procedure, Hungerford explained that his failure to respond to the order for more definite statement and the order to show cause was because his attorney's office had undergone renovations that resulted in confusion and misplaced correspondence. He submitted an affidavit by his counsel's secretary, Mary Breaux ("Breaux"). In the affidavit, Breaux said that preparation for the office renovations began on an unspecified date in January 2002, and on an unspecified date in February 2002, client files, computers and fax machines were moved because the office was being repainted. During this unspecified period, Breaux stated in

the affidavit, there was "total confusion," the mail and filing were "totally disrupted," and Hungerford's file was misplaced. Breaux did not remember seeing the show cause order. Breaux said that the office was "back in order by March 22, 2002." Another employee in the office of Hungerford's counsel said that the show cause order in Hungerford's case was located a day before they received the "Order of Dismissal." In addition, Hungerford's counsel stated that he was out of the country from March 13 to March 20, 2002.

■■■ After considering Hungerford's motion to set aside the dismissal and the supporting documents, the Claims Commission denied the motion. It reasoned that Hungerford's attorney failed to timely respond to the order requiring a more definite statement, which he received well before the office renovation, and that the attorney's office renovation and trip out of the country did not justify Rule 60.02 relief from the consequences of failing to respond to the show cause order. The Claims Commission observed further that Hungerford had full notice that he was delinquent in his obligation to file the more definite statement and had been allowed ample time to file the statement before his claim was dismissed:

> [I] issued the Order of Dismissal more than four months after the filing of [the State]'s motion [for more definite statement].... [T]he Order of Dismissal was entered only after the appearance of [Hungerford]'s counsel in open court assuring this Commissioner that action would be taken shortly on [the State]'s original motion."

From the order denying his motion to reinstate his claim, Hungerford now appeals. Proceedings before the Claims Commission are governed by the Tennessee Rules of Civil Procedure. Tenn.Code Ann. § 9–8–403(a)(1) (1999 & Supp.2003);

*Tuck v. State,* 1996 WL 310012, at *1 (Tenn.Ct.App. June 11, 1996). Tennessee Rule of Civil Procedure 60.02 provides: "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect;...." Tenn. R. Civ. P. 60.02. The burden of proof under Rule 60.02 is on the party seeking relief, and that party carries a heavy burden. *Gilliland ex rel. Gilliland v. Pinkley,* 2001 WL 557985, at *4 (Tenn.Ct.App. May 23, 2001) (citations omitted). Rule 60.02 is intended to be an "exceptional remedy" that serves as " 'an escape valve from possible inequity that might otherwise arise from the' " Tennessee Rules's principles of finality. *Id.* (quoting *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn.1990)). The difficulties of managing a law office generally do not qualify for relief under the Rule: " 'Parties are not justified in neglecting their cases merely because of the stress or importance of their own private business and such neglect is ordinarily not excusable.' " *Food Lion, Inc. v. Washington County Beer Board,* 700 S.W.2d 893, 896 (Tenn.1985) (citations omitted). The disposition of motions under Rule 60.02 are best left to the discretion of the lower court, and such decisions are reversed if they constitute an abuse of that discretion. *Spruce v. Spruce,* 2 S.W.3d 192, 194 (Tenn. Ct.App.1998) (quoting *Underwood v. Zurich Ins. Co.,* 854 S.W.2d 94 (Tenn.1993)).

■ On appeal, Hungerford first argues that the Claims Commission is mandated to transfer a wrongful death case when there is concurrently pending before the circuit court a case that arose out of the same factual situation. Therefore, he argues, the Claims Commission had no jurisdiction to dismiss his claim. This argument was not raised before the Claims Commission in Hungerford's motion to transfer or in any other pleading. Indeed, Hungerford's motion to transfer appears to have been based upon the discretionary authority of the Claims Commission under section 9–8–404(b) of the Tennessee Code, which provides: "The commission *may* transfer the action to the appropriate chancery or circuit court with venue ... after a determination ... by the commission that fair and complete resolution of all claims involved cannot be accomplished in administrative proceedings before the commission." Tenn.Code Ann. § 9–8–404(b) (1999) (emphasis added). We therefore decline to address this issue, as "issues not raised in the trial court cannot be raised for the first time on appeal." *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn.1991).

■ To the extent that Hungerford argues that the Claims Commission's failure to transfer the claim to circuit court was an abuse of discretion, we cannot conclude that this was an abuse of discretion under section 9–8–404(b). The Commission had not ruled on the motion, but rather was awaiting Hungerford's filing of the more definite statement. As noted by the State, the more definite statement was required because Hungerford's claim did not name a state employee; had the more definite statement been filed, some other type of disposition, such as dismissal, might have been more appropriate than transfer. Consequently, the Commission's failure to grant the motion to transfer was not an abuse of discretion.

■ Hungerford next asserts that the Claims Commission abused its discretion in refusing to grant his motion to set aside the dismissal and reinstate his claim. He argues that his counsel's office renovation and subsequent trip out of the country caused his failure to respond to the show

cause order and constitute inadvertence and excusable neglect as contemplated by Rule 60.02. Hungerford argues that the State was not prejudiced by his delay in filing the more definite statement.

Hungerford does not dispute that he had notice of the State's November 29 motion for more definite statement and the Claims Commission's December 18 order requiring a more definite statement, both received well before the office renovations began. Moreover, Hungerford's counsel made an appearance before the Commission on February 1, approximately two weeks after the more definite statement was due, and assured the Commissioner that the already-overdue more definite statement would be filed "shortly." Therefore, throughout the office renovation and the trip out of the country, Hungerford's counsel knew he had an obligation to file the more definite statement and that the statement was already late. Hungerford's claim was dismissed on March 22, over a month and a half after the time his attorney promised the already-late more definite statement would be filed, and almost four months from the time the State's motion for more definite statement had been filed. As noted above, the "stress or importance" of running a business is no justification for neglecting a client's case. *Food Lion, Inc. v. Washington County Beer Board*, 700 S.W.2d 893, 896 (Tenn.1985) (citations omitted). Courts in other jurisdictions, construing their counterparts to Rule 60.02, have concluded that losing an active file during office renovations is not excusable neglect. *See Strong v. Kirallah*, 1985 WL 7962, at *4 (Ohio App.Ct. April 11, 1985) ("It is difficult to understand how counsel could misplace a client's active file for more than three and one-half months, when that client is in the midst of litigation, especially when time is of the essence."); *see also* Charles Alan Wright et al., *Federal Prac-*

*tice and Procedure* § 2858 n. 20 (1995) (citing *Standard Newspapers Inc. v. King*, 375 F.2d 115, 116 (2d Cir.1967)) ("Misplacing papers in the excitement of moving an attorney's office did not constitute excusable neglect in not filing an answer and did not warrant vacating default judgment when the move was made over 14 months after the commencement of the action."). Under all of these circumstances, we cannot conclude that the Claims Commission's denial of Hungerford's Rule 60.02 motion was an abuse of discretion.

The decision of the Claims Commission is affirmed. Costs are taxed to Plaintiff/Appellant Donald F. Hungerford and his surety, for which execution may issue if necessary.